UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                                  Chapter 11

261 East 78 Lofts LLC,                                                    Case No. 16-11644 (SHL)

                           Debtor.
------------------------------------------------------------x

# DISCLOSURE STATEMENT PURSUANT TO
# SECTION 1125 OF THE BANKRUPTCY CODE

THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR BANKRUPTCY COURT APPROVAL, BUT HAS NOT YET BEEN ACTUALLY APPROVED.

      261 East 78 Lofts, LLC (the "Debtor") hereby submits this Disclosure Statement (the "Disclosure Statement"), pursuant to §1125 of Title 11, United States Code (the "Bankruptcy Code"), in connection with the Debtor's accompanying Chapter 11 Plan of Reorganization dated September 1, 2016 (ECF #15) (the "Plan").

## I.  OVERVIEW

      **A. Summary of the Plan.**  This Plan is predicated on a sale (the "Sale") of the Debtor's six-story medical office building at 261 East 78th Street, New York, NY [designated as Block 1433, Lot 21] (the "Property"), together with an assignment of the existing commercial leases.  The specific time, terms and conditions of the Sale shall be established at a future date by the Bankruptcy Court pursuant to a Bidding Procedures Order (defined below) to be entered on notice to all creditors after a suitable "stalking horse buyer" is designated by the Debtor.  The Property is being marketed by Eastern Consolidated.

      The Debtor is seeking a purchaser for the Property in the range of $20,000,000 or more following an auction process (the "Successful Purchaser").  The Property is encumbered by two

disputed mortgage liens, in the aggregate principal amount of $10,000,000, held by SDF85 78th Street 1 LLC and SDF85 78th Street 2 LLC, affiliates of Madison Realty Capital (collectively, the "Madison Capital Lenders").  There is also a disputed mortgage lien asserted by Joseph Zelik in the principal amount of $1,750,000, and tax liens held by New York City and by Bank of New York Mellon as Collateral Agent and Custodian as assignee of New York City in the amount of approximately $860,000.  Unsecured claims largely consist of security deposits and unfunded work letters totaling approximately $600,000.  The Plan is designed to provide a mechanism for selling the Property at fair market value and then distributing the net proceeds of sale to the holders of allowed claims based upon the priority scheme established under the Bankruptcy Code.

In an effort to minimize litigation, the Plan provides a proposed settlement option in favor of the Madison Capital Lenders of either (i) accepting a total payment of $14,533,333 at closing (anticipated to be no later than January 31, 2017), representing the outstanding mortgage debt, with interest at a proposed settlement rate of 16% per annum (instead of 24%) retroactive to the date of the alleged default on March 1, 2014; or (ii) litigating the validity, extent and scope of the alleged mortgage indebtedness, with all disputed amounts to be held in escrow pending a determination by the Bankruptcy Court of the Debtor's objections.

The Debtor and the Madison Capital Lenders have had preliminary negotiations, which are expected to continue during the confirmation process.  At this point, there is no definitive agreement, although the Debtor believes that the settlement proposal contained in the Plan is in line with the Debtor's settlement position.

All surplus proceeds after payment of allowed claims shall be retained by the Debtor for distribution to Lee Moncho as the only legitimate member and equity holder of the Debtor.  Chaim

Miller and Chun Peter Dong have asserted highly disputed claims as equity interest holders. Their interests will also be litigated while the sale and confirmation process moves forward.

To maximize the Debtor's ability to qualify for a transfer tax exemption, final approval of the Sale shall be sought prior to the confirmation hearing on the Plan, with a closing on the Sale to occur after the confirmation hearing as required by 11 U.S.C. § 1146(a).

**B. Confirmation of the Plan.**

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan, on _____, 201__ at __:__ _.m., Eastern Standard Time, before the Honorable Sean H. Lane in the United States Bankruptcy Court, One Bowling Green, Courtroom 701, New York, NY 10004. At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Debtor believes that the Plan will satisfy all applicable requirements of Section 1129(a) of the Bankruptcy Code. Confirmation makes the Plan binding upon the Debtor and all creditors and equity holders.

Any party in interest may object to confirmation of the Plan. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan, be served upon: counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, Attn: Kevin J. Nash, 1501 Broadway, 22nd Floor, New York, New York 10036, on or before _____, 2016, in the manner described in the order scheduling hearing on confirmation accompanying this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in open court.

In order for the Plan to be accepted on a consensual basis, each class must accept the Plan or be deemed to accept the Plan. Acceptance is based upon affirmative votes from each class of creditors holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims of those creditors in the particular class who actually vote.

In accordance with section 1126(f) of the Bankruptcy Code, all classes of claims that are impaired may vote to accept or reject the Plan. A class of claims is impaired if the Plan modifies, alters or changes the Claimant's legal, equitable or contractual rights against the Debtor. In this case, the Class 4 Claims of General Unsecured Creditors are potentially impaired and eligible to vote on the Plan.

Ballots for acceptance or rejection of the Plan will accompany the Plan, and should be completed by all voting classes of creditors. After carefully considering this Disclosure Statement and the Plan, please indicate your vote on the enclosed ballot and return same before the voting deadline to Goldberg Weprin Finkel Goldstein LLP, Attn Kevin J. Nash, 1501 Broadway, 22nd Floor, New York, New York 10036. Facsimile: (212) 422-6836. E-mail: KNash@GWFGlaw.com.

In order to be counted, your ballot must be actually received on or before _____, 2016 at 5:00 p.m. Eastern Standard Time (the "Voting Deadline"). All forms of personal delivery of ballots including overnight delivery service, courier service, and delivery by hand are acceptable. Facsimile and electronic transmissions are acceptable as well. There is no need to file your Ballot with the Clerk of the Bankruptcy Court. If your ballot is damaged or lost, or if you do not receive a ballot to which you are entitled, you may request in writing a replacement by contacting Goldberg Weprin Finkel Goldstein LLP, Attn Kevin J. Nash, at the stated address.

Only actual votes will be counted. A failure to return a ballot will not be counted either as a vote for or against the Plan. If a creditor casts more than one ballot voting the same Claim before the Voting Deadline, the latest dated Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior ballots.

**D.    Disclaimer.** The Bankruptcy Court's approval of this Disclosure Statement does not constitute an endorsement of the Plan. No representations other than those explicitly set forth in this Disclosure Statement are authorized concerning the terms of the Plan or the Debtor's development plans, the scope of assets or the extent of the Debtor's liabilities.

This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain documents related to the Plan, certain events in the case and certain financial information. Although the Debtor believes that the Disclosure Statement is accurate, the terms of the Plan govern, and creditors are advised to review the Plan in its entirety.

## II.    EVENTS LEADING UP TO THE BANKRUPTCY FILING

The Property was the subject of an earlier Chapter 11 case before the Hon. Robert E. Gerber (261 East 78 Realty Corporation, Case No. 11-15624) (the "Prior Case"), to address defaults under prior mortgages held by MB Financial Bank NA ("MB"). As part of the confirmed reorganization plan in the Prior Case, MB agreed to a discounted payoff of $10,700,000.

Through an introduction by the Debtor's prior lawyer, Jonathan Pasternak, Lee Moncho negotiated with Sam Sprei ("Sprei") to act as the "take-out lender" and fund the total sum of $14 million needed to confirm the plan in the Prior Case. The $14 million package included a new loan of $10 million from Sprei at a favorable interest rate, plus a contribution of $4 million in fresh

5

capital from Chaim Miller ("Miller").  In return, Miller became eligible to own a shared equity stake with Mr. Moncho in the post-confirmation ownership of the Property.

Following confirmation of the Confirmed Plan, Lee Moncho learned just prior to the scheduled closing, that the actual take-out lender would not be Sprei, but instead, Sprei recruited the Madison Capital Lenders, at "hard-money" rates.  He also learned for the first time that Miller did not have all of his required $4 million of new capital.

With no time available to find an alternate source of funding. Mr. Moncho was forced to proceed with the Madison Capital Lenders as a bridge lender to satisfy the MB mortgage debt. Accordingly, the Debtor was formed as the new fee owner of the Property, with Mr. Moncho retaining a 37.5% membership interest, and Chaim Miller, through 261 Lofts Manager LLC, becoming the other 62.5% member based upon his dual promise to deliver the required new capital of $4 million, and pay the interest on the mortgages held by the Madison Capital Lenders. Of course, Miller failed to deliver on his commitments.

To make matters worse, it was later discovered that Sprei surreptitiously split off one of the MB mortgages in the sum of $1,750,000 and first assigned it to one of his companies (261 C Note Buyer LLC), and then re-assigned it to one of his business associates, Joseph Zelik, in violation of the Debtor's Operating Agreement and the confirmed plan in the Prior Case.

Miller later improperly transferred a part of his membership interest in 261 Lofts Manager LLC to Chung Peter Dong for the sum of $1 million in violation of the Operating Agreement and without Mr. Moncho's knowledge or consent.

Moncho confronted Miller and Sprei with their wrongdoing, and ultimately Miller executed a written escrow agreement on September 30, 2015, whereby Mr. Moncho received an

6

assignment of Miller's membership interest in 261 Lofts Manager, subject to potential reassignment back to Miller so long as Miller honored his financial commitments to obtain, *inter alia*, a satisfaction of the disputed Zelik mortgage and a settlement with Dong releasing any claim to a membership interest in 261 Lofts Manager LLC, all before a December 31, 2015 deadline.

Miller failed to comply with these commitments and forfeited any ability to regain his membership interest in 261 Lofts Manager LLC. However, instead of releasing Miller's membership interests from escrow, Miller's counsel, Jonathan Pasternak, commenced an interpleader suit, contending that there is a purported "dispute" concerning the status of Miller's membership interest in 261 Lofts Managers LLC, when in fact his multiple defaults are clear and unequivocal.

In the meantime, because Miller and Sprei failed to manage the Property properly, the mortgages went into default, and foreclosure actions were commenced by the Madison Capital Lenders and Zelik. In addition, real estate taxes were unpaid, with New York City ultimately selling certain of its liens to the Bank of New York Mellon as Collateral Agent and Custodian.

With all of the litigation pending, the Debtor filed a Chapter 11 petition on June 3, 2016 to protect the Property while the Debtor seeks a purchaser and addresses the various claims through the bankruptcy claims objection process.

### III.    THE PLAN

**UNCLASSIFIED CLAIMS**

**General.** As provided for under Bankruptcy Code Section 1123, Allowed Administrative Claims are not classified under the Plan.

7

All Administrative Expense Claims (other than Professional Fee Claims) shall be paid in the regular course of business under the terms of applicable contracts and agreements which currently exist between the Debtor and its respective creditors.

The holders of professional fee claims for services rendered on behalf of the bankruptcy estate shall (a) file, on or before the date that is sixty (60) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full by the Debtor, in cash form the Confirmation Fund, in such amounts as are Allowed by the Bankruptcy Court.

**CLASSIFIED CLAIMS**

**Summary.**  The categories listed below classify Claims against the Debtor for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Designation | Impaired |
|---|---|---|
| Class 1 | Real Estate Tax Claims | No |
| Class 2 | Disputed Secured claims of Madison Capital Lenders | No |
| Class 3 | Disputed Secured claim of Joseph Zelik | No |
| Class 4 | Unsecured Claims of all tenants and vendors. | Yes |
| Class 5 | Equity Interests | Yes |

**Classification, Treatment and Voting**

**Class 1 —Real Estate Tax Claims**

Classification: Class 1 is composed of the Real Estate Tax Claims.

Treatment: The Department of Finance, or such other designated agency of the City of New York, and/or the Bank of New York Mellon as Collateral Agent and Custodian as assignee

8

of the City of New York, shall receive a cash distribution on the Closing Date from the proceeds of sale equal to the allowed amount of all outstanding real estate tax liens, claims, and related charges.

Voting: Class 1 is unimpaired. Real Estate Tax Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Class 2 — Disputed Secured Claim of the Madison Capital Lenders.**

Classification: Class 2 is composed of the disputed Secured Claims of the Madison Capital Lenders, which holds two mortgages against the Property.

Treatment: The Madison Capital Lenders shall have the option to either (i) accept a proposed settlement by the Debtor for purposes of Bankruptcy Rule 9019(a) of receiving the total sum of $14,533,333 on the Closing Date in full satisfaction of all of the Madison Capital Lenders' claims for unpaid principal, accrued interest, fees and other charges; or (ii) defend against the Debtor's objection to the validity, extent and scope of the Madison Capital Lenders' mortgages and entitlement to interest, fees and other charges, based upon the Madison Capital Lenders' involvement and association in the fraudulent actions of Chaim Miller and Sam Sprei. Should litigation ensue, the Debtor shall establish a reserve for all amounts then in dispute from the net proceeds of the Sale. This reserve shall be held by the Disbursing Agent in the Confirmation Account pending the final allowance of the Madison Capital Lenders' Secured Claims and then disbursed to Madison Capital Lenders as directed by the Bankruptcy Court. The Debtor shall pay the undisputed principal portion of the Madison Capital Lenders' Secured Claim on the Closing Date, together with all documented and allowed pre-petition and post-petition protective advances. The funds covering all other aspects of the Madison Capital Lenders' Secured Claims

shall remain in escrow. As part of the disposition of the Madison Capital Lenders' Secured Claims, the underlying mortgages shall be deemed satisfied and discharged or assigned to the designee of the Successful Purchaser of the Property.

<u>Voting</u>: Class 2 is unimpaired. The Secured Claims of Madison Capital are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code since the claims will be paid in full after the claims objection process has been completed.

**Class 3 — Disputed Secured Claim of Joseph Zelik.**

<u>Classification</u>: Class 3 is composed of the disputed Secured Claim of Joseph Zelik ("Zelik"), who alleges that he also holds a mortgage against the Property.

<u>Treatment</u>: The Zelik mortgage is highly disputed, having been issued without authorization and in violation of the Debtor's Operating Agreement through the machinations of Sam Sprei. Accordingly, the Debtor intends to file comprehensive objections to expunge the Zelik mortgage in its entirety. Nevertheless, for purposes of the Plan, to the extent that Zelik's mortgage is allowed in whole or in part, Zelik shall receive a cash payment on the Closing Date in an amount equal to any allowed portion as finally determined by the Bankruptcy Court after adjudication of the Debtor's intended objections.

In the event the Zelik mortgage has not been ruled upon prior to the Closing Date, the Debtor shall establish a reserve for all amounts then in dispute from the net proceeds of the Sale. This reserve shall be held by the Disbursing Agent in the Confirmation Account pending the final determination of the Debtor's objection.

Voting: Class 3 is unimpaired. The Secured Claim of Zelik is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, since his claim will be paid if allowed by the Bankruptcy Court.

**Class 4 —Unsecured General Claims**

Classification: Class 4 is composed of allowed Unsecured General Claims, consisting primarily of unfunded obligations owed to tenants.

Treatment: To the extent that the proceeds are sufficient to pay unsecured debt, each holder of an Allowed Unsecured General Claim shall receive a cash dividend on the Closing Date equal to the amount of its allowed Unsecured Claim, or a *pro rata* portion thereof.

Voting: Class 4 is impaired. The General Unsecured Claims are entitled to vote on the Plan, because although the Debtor believes that the Property has sufficient equity to pay Class 4 claims, the Debtor cannot guaranty payment in full.

**Class 5 — Equity Interests**

Classification: Class 6 is composed of the Equity Interest.

Treatment: For purposes of the Plan, Lee Moncho is recognized as the sole Equity Interest holder of the Debtor and the only person eligible to receive the surplus proceeds and recoveries from Causes of Action, if any, after payment in full of Administrative Expense Claims, and allowed Class 1, 2, 3 and 4 Claims. To the extent that Chaim Miller, Sam Sprei or Chun Peter Dong assert that they hold an Equity Interest in the Debtor, this will be the subject of litigation. In the event this litigation has not been finally determined on or prior to the Closing Date, the Disbursing Agent shall hold all of the net Sale proceeds that are to be distributed to Class 5 Equity Interests in the Confirmation Fund pending the final resolution of the litigation.

Voting: As an insider, the vote of the Equity Interest Holder is not counted in considering confirmation of the Plan.

## IV. IMPLEMENTATION OF THE PLAN

**Implementation**.  The Plan shall be implemented by the Sale of the Property and the establishment of the Confirmation Fund and related reserves.  Cash payments to be made pursuant to this Plan will be made by the Disbursing Agent on the Closing Date, or at such later date as ordered.

The Confirmation Order shall constitute an order of the Bankruptcy Court authorizing the Debtor for title purposes, on the occurrence of the Effective Date, to sell the Property to the Successful Purchaser for the approved purchase price, with all proceeds of the Sale and recoveries from Causes of Action to be paid to creditors in order of priority in accordance with the Plan and, after all creditors are paid under the Plan, to distribute the surplus to the Equity Interest Holder, Lee Moncho.

The Confirmation Order shall authorize the Debtor to:

(a) convey title to the Property pursuant sections 363(b) and (f), 365, 1123(a)(5)(D) and 1141(a) and (c) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances or interests (other than permitted encumbrances, if any, specified in the APA), to the Successful Purchaser pursuant to this Plan and the APA; and

(b) pay all allowed amounts required to creditors and then to the Equity Interest Holder, in accordance with the terms of this Plan.

**Discharge of Obligations**.  Except as otherwise expressly provided for and preserved herein, upon the occurrence of the Closing Date, as the case may be, any mortgages, liens, notes,

bonds, agreements, instruments or documents, or otherwise, evidencing or creating any indebtedness, guaranties or other obligations of the Debtor that relate to Claims under this Plan and relating to the Property, shall be cancelled, and the obligations of the Debtor under each of the foregoing shall be discharged; provided, however, that, to the extent applicable, the respective mortgages held by the Madison Capital Lenders shall not be cancelled and shall instead be treated as set forth in the APA.

**Post-Closing Date Transactions**. On or after the Closing Date, the Disbursing Agent, on behalf of the Debtor, is hereby authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the transfer of the Property, including the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree.

**Transfer of Assets**. On the Closing Date, title to the Property shall be transferred to the Successful Purchaser pursuant to and in furtherance of this Plan by means of the following:

(a)    a Bargain and Sale Deed to the Property in form and substance reasonably acceptable to the Successful Purchaser to be recorded in the appropriate register's office (the "Deed"), together with any and all New York City closing documents, including all New York State real property transfer tax returns and any and all affidavits, certificates and other documents which are usual and customary to facilitate a sale of real property in the City of New York;

(b) a Bill of Sale, in form and substance reasonably acceptable to the Successful Purchaser, transferring all personal property of the Debtor used in or useful to the operation and maintenance of the Property; and

(c) An Assignment of all commercial leases in form and substance reasonably acceptable to the Successful Purchaser.

**Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, under this Plan, the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, this Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to this Plan or the Sale shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government official or agent shall forego the collection of any such tax or government assessment and accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment, including without limitation the New York City Real Property Transfer Tax and New York State Documentary Tax.

**Preservation of Other Rights and Causes of Action**.  All other Causes of Action belonging to the Debtor against third parties shall remain property of the Debtor's estate and shall be vested in the Reorganized Debtor (i.e. Debtor following Confirmation of the Plan) for prosecution as the Reorganized Debtor deems necessary and appropriate.

**Post-Confirmation Management**.  The Reorganized Debtor shall continue to be managed by Lee Moncho.

**Rights and Powers of the Debtor**.  The Debtor shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) direct that all distributions contemplated hereby be made, (iii) prosecute, settle and enforce all causes of action and claims on behalf of the estate, and (iv) exercise such other powers as may be deemed by the Debtor to be necessary and proper to implement the provisions hereof.

**Assumption of all Existing Leases**.  The leases relating to the Property together with any other designated executory contracts shall be assumed and assigned to the Successful Purchaser under the Sale Order, all without the necessity of the filing of a formal motion.  Debtor shall execute an assignment of leases in favor of the Successful Purchaser with adjustments to be made as of the Closing Date.

**Conditions Precedent To The Effective Date Of The Plan.**  The following are conditions precedent to the Effective Date that must be satisfied:

(a)    The Sale Order shall have been entered by the Bankruptcy Court approving the APA in all material respects, and the Debtor shall have designated a Successful Purchaser for the Property;

(b)    Confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court;

(c)    The Confirmation Order shall have become a Final Order, unless the Bankruptcy Court waives the period set forth in Bankruptcy Rule 6004(h);

(d)  The Closing Date shall have occurred, the purchase price received by the Debtor, and title to the Property shall have been conveyed to the Successful Purchaser in accordance with this Plan and the Confirmation Order;

(e)  There shall not be in effect on the Effective Date any Order entered by a court of competent jurisdiction staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan; and

(f)  All other actions and documents necessary to implement the Plan shall have been effected or executed in form and substance satisfactory to the Debtor.

**Retention of Jurisdiction**.  Notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction until the case is closed to perform the following:

(a)  Ensure that the Plan is fully consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code;

(b)  Resolve all matters arising under or relating to the Plan, including, without limitation, the enforcement, interpretation and any issues or dispute relating to the post-confirmation closing on the Sale of the Property;

(c)  Allow, disallow, determine, liquidate or classify, any secured or unsecured Claims, including, without limitation, the resolution of any request for payment of any Administrative Expenses, the resolution of any and all objections to the allowance any Claims, and the resolution of any adversary proceeding;

(d)  Grant or deny any and all applications for allowance of compensation and reimbursement of expenses by the professionals retained during the bankruptcy case;

(e)  Resolve any motions or applications pending on the Effective Date;

(f) Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the Plan;

(g) Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, deeds, instruments and other agreements or documents created in connection with the Plan or to enforce all orders, judgments, injunctions, and rulings entered in connection with the bankruptcy case;

(h) Issue any orders or take such other actions as may be necessary or appropriate to restrain interference by any person or entity with consummation or enforcement of the Plan; and

(i) Enter a Final Decree concluding the bankruptcy case.

## V.  BASIC REQUIREMENTS FOR CONFIRMATION OF THE PLAN

Section 1129(a) of the Bankruptcy Code lists a number of findings that need to be made prior to Confirmation. In this case, because the Debtor is selling the Property and distributing all of the net proceeds in accordance with the priority scheme established under the Bankruptcy Code, to the holders of allowed claims. In the end, the Debtor anticipates that all creditors will support the Plan as the best way to maximize the value of the Property, even if various claims come under objection. Accordingly, the Debtor is confident that creditors will support the Plan.

In addition to acceptance of the Plan by creditors, there are two additional requirements that are worth highlighting for purposes of the Disclosure Statement:

**A.  Feasibility Of The Plan.** As a prerequisite to confirmation, Bankruptcy Code § 1129(a)(11) requires that the Debtor and its equity interest holders demonstrate their

ability to fund the Plan and establish that confirmation is not likely to be followed by the need for further financial reorganization or restructuring. Since the Debtor is liquidating its assets at fair market value, this test is easily met.

**B.     Best Interests Of Creditors Test.** The Plan must also be in the "best interests of creditors". This is a legal term of art which requires that the Plan provides a dividend to the class of creditors that vote against the Plan, which is equal to or greater than the distribution those creditors would realistically receive if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code. In fact, the cost of liquidation under Chapter 7 includes an additional layer of administrative expenses for the Trustee and his professionals, and the Trustee would lose the benefit of the Section 1146(a) tax exemption that is not available in a Chapter 7 case. Accordingly, there is little doubt that the net sale proceeds available for distribution to creditors under the Plan will be greater than the sums remaining for creditors in a Chapter 7 liquidation.

## VI.  **CONCLUSION**

The Debtor believes the Plan should be confirmed, and urges creditors to vote in favor of the Plan.

Dated: New York, New York
       September 1, 2016

| | |
|---|---|
| 261 EAST 78 LOFTS, LLC | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP<br>Attorneys for the Debtor<br>1501 Broadway, 21st Floor<br>New York, NY 10036 |
| By: /s/ Lee Moncho<br>     Manager | By: /s/ Kevin J. Nash |