Leo Fox, Esq.
630 Third Avenue
18th Floor
New York, New York 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In Re:                                                                    Case No. 16-11644 (SHL)

      261 E. 78 LOFTS LLC,                                 Chapter 11

                      Debtor.
------------------------------------------------------X

## NOTICE OF MOTION ENTRY OF AN ORDER PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE GRANTING RELIEF FROM THE AUTOMATIC STAY

***PLEASE TAKE NOTICE*** that on November 16, 2016, at 2:00 p.m., or as soon thereafter as counsel may be heard, 261 Lofts Manager LLC and Henry Miller, by their attorney, Leo Fox, Esq., will move before the Honorable Sean H. Lane, United States Bankruptcy Judge for the Southern District of New York, Old Customs House, One Bowling Green, New York, New York, for entry of an Order pursuant to 11 U.S.C. § 362(d) granting relief from the automatic stay to permit Movants to proceed in the New York State Supreme Court action entitled Debello Donnellan Weingarten Wise & Wiederkehr, LLP v. Harry Miller and Lee Moncho (Index No. 50229/2016) (the "State Court Action") up to and through entry of judgment only and granting such other relief as may be appropriate.

***PLEASE TAKE FURTHER NOTICE*** that any objections to the proposed order must be filed with the Bankruptcy Court electronically in accordance with General Order 473 (General Order 473 and the User's Manual for the Electronic Case Filing System can be found at http://www.nyeb.uscourts.gov/, the official Web site for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Word, Wordperfect or any other

Windows-based word processing format (with a hard-copy delivered directly to Chambers), and served in accordance with General Order 473, and served upon Leo Fox, Esq., 630 Third Avenue, 18th Floor, New York, NY, 10017 and in accordance with the Local and Federal Rules of Bankruptcy Procedure, no later than seven (7) days before the hearing date.

Dated: New York, NY
October 28, 2016

/s/ *Leo Fox*
LEO FOX, ESQ.
Attorney for Movants
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595

Leo Fox, Esq.
630 Third Avenue
18th Floor
New York, New York 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:                                                                   Case No. 16-11644 (SHL)

    261 E. 78 LOFTS LLC,                                Chapter 11

                      Debtor.
------------------------------------------------------------X

TO:    THE HONORABLE SEAN H. LANE
         UNITED STATES BANKRUPTCY JUDGE:

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE GRANTING RELIEF FROM THE AUTOMATIC STAY OR AN ORDER DETERMINING THAT THE STAY IS NOT APPLICABLE TO THE NEW YORK STATE SUPREME, COUNT OF WESTCHESTER INDEX NO. 50229/2016 (THE "STATE COURT")**

**PRELIMINARY STATEMENT**

1.    261 Lofts Manager LLC and Henry Miller, seeks relief from the automatic stay pursuant to §§ 362(d)(1) and 362(d)(2) of the Bankruptcy Code to continue the State Court action commenced by Delbello Donnellan Weingarten Wise & Widerkehr, LLP, who were escrow agents in the New York State Supreme Court, Westchester County to determine the rights and entitlements of the parties including the equity interest held in the above Debtor (the "State Court Action"). The Movants have no objection to the sale of the Debtor's real property under the auspices of the Bankruptcy Court and the Chapter 11 Plan provided that protection is given to creditors and equity holders to assure that all available assets are distributed fairly and rateably and not concealed by the Debtor's principals. The Movants wish to seek relief from the State Court solely for the purposes of determining the equity interest of the parties and the entitlements of such

C:\261 E. 78 Lofts LLC\Motion to Lift Stay\10-28-16

parties to any distribution after senior creditors have been paid.

## BACKGROUND

2. The facts set forth herein have been set forth in the objections of the Movants to the Disclosure Statement, which has been filed contemporaneously with this Motion and the relevant exhibits are attached to such objections. On December 6, 2011, 261 East 78th Realty Corporation filed its petition under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court of the Southern District of New York (Case No. 11-15624 (REG)).1

3. Three (3) years later, as noted in Mr. Moncho's affidavit verified January 27, 2014 in support of the confirmation of the Second Amended Plan the Debtor submitted a Plan calling for in exchange for transfer of the ownership to Mr. Henry Miller's entity 261 East 78 Lofts LLC, Sam Sprei, on behalf of Henry Miller, to fund all the distributions to be made under the Plan consisting of $10,700,000 on account of the first mortgage held by MB Financial Bank, $650,000 for administrative expenses, $1,325,000 to Hermes in consideration of the assignment of his claim to the Plan funder ("Henry Miller's entity 261 East 78 Lofts LLC") and $450,000 distribution fund payable to the unsecured creditors.

4. Mr. Moncho notes that Mr. Sprei, on behalf of Mr. Miller, had arranged for "all of the funding and/or financing necessary to consummate the plan and all distributions required thereunder" and states

> He is gratuitously granting me at 37.5% equity interest in the Plan Funder as an accommodation to me, as both Mr. Sprei and I believe Mr. Sprei will need my continued experience, know how, understanding and involvement in management and development of the Property so that he may someday see a return on his significant investment under the Plan totaling no less than now $13,625,000.

---

1 It is not at all clear how the case herein as a repetitive filing did not go back to Judge Gerber. Undoubtedly, this is due to the failure of the Debtor to disclose on its Petition the facts of the prior filing.

2

5. Mr. Moncho continued to affirm that he would continue to serve as the sole officer of the Debtor for which he would receive no compensation (Affidavit – Page 11 – 23(g). Contrary to those sworn statements, Mr. Moncho took no only a management fee of 1.5% of gross revenues of the Debtor.

6. Under the terms of the Operating Agreement, Mr. Moncho was obligated to complete the leasing of the premises as part of his obligations to manage and develop the property (Moncho Affidavit – Paragraph 5) (Exhibit B). As was noted in the Disclosure Statement in the earlier case (Docket No. 177 – Page 12), the Debtor indicated that it could rent out those floors incurring build out expense of approximately $300,000 to $350,000 per floor on one floor and approximately $100,000 on the fifth floor (although the schedule seems to reflect that the third and fourth floors were vacant).

7. The Debtor and Mr. Moncho claimed that they were defrauded into accepting a "hard money" loan. The MB Loan deadline of 120 days after Confirmation was quickly approaching. Mr. Miller had obtained a traditional bank loan including a commitment from Signature Bank but the income was not present to sustain and substantiate such a loan and the reason that the income was not present was that Mr. Moncho failed to abide by his obligations as the sole officer and under the terms of the Operating Agreement to lease the space out. As a result, that loan could never be consummated. Instead, Miller obtained a commitment by the Madison entities to lend the funds at a higher interest rate.

8. On March 25, 2014, the Madison Loan closed. At the closing of the transactions, Mr. Miller arranged for the advance of sufficient funds consisting of the amounts set forth in the Moncho Affidavit of $10,700,000 on account of the Debtor's

3

obligations to MB under the Settlement Agreement, $650,000 for administrative expenses and professional fees, $1,325,000 to Hermes on accounts of its Class 3 secured claim, and $450,000 paid to the allowed Class 4 unsecured creditors. (See Moncho Affidavit – Paragraph 4). By application dated March 14, 2014, the Debtor requested entry of a final decree, stating that substantial consummation of the Plan had occurred and that on March 11, 2014 complete distributions had been made to the creditors under the Plan (Application - Paragraph 5-6).

9.   Mr. Miller's had complied with all of the obligations that Mr. Moncho had made it increasingly difficult. Mr. Miller was entitled and authorized under the Operating Agreement to do whatever he wished to do and he determined to transfer a portion of his interest in his wholly owned entity to Mr. Dong.

10.   Subsequently and during the time period that Mr. Moncho was the sole officer and in charge of operations, the Madison mortgagee commenced foreclosure proceedings based upon Mr. Moncho's failure to make mortgage payments. Although Mr. Moncho claims that the default was because of Mr. Miller and Mr. Sprei, there were insufficient funds available due because Mr. Moncho and his family took over $520,000 during the period May 1, 2014 through December 8, 2015. This amount equaled many months of mortgage payments.

11.   On or about September 30, 2015, an Escrow Agreement between Miller and the lawfirm of Delbello Donnellan Weingarten Wise & Wiederkehr, LLP, was entered into pursuant to which, among other things, an assignment of the membership interests of 261 E. 78th Street Lofts LLC and an assignment of membership interest dated December 28, 2014 would be delivered to Moncho in the event certain conditions described n the Escrow

4

Agreement had not been satisfied.

12. Pursuant to competing demands made by Miller and Moncho, on or about January 8, 2016, an interpleader action was commenced in the New York State Supreme Court, entitled Delbello Donnellan Weingarten Wise & Wiederkehr, LLP v. Harry Miller and Lee Moncho, (New York State Supreme Court, County of Westchester, Index No. 50229/2016) (the "State Court Action") to determine the rights and obligations of the parties with respect to the Escrow Agreement and the Assignments provided therein. The issue in this interpleader action was to determine whether the Escrow Agent should deliver equity interests of the Debtor to Moncho, among other things.

13. Instead of proceeding with litigation, Mr. Moncho filed a Chapter 11 case clearly at time when it appears that it is undisputed and is acknowledged in the Disclosure Statement he was holding no more than 37.5% of the equity interests of the Debtor (Disclosure Statement – Page 6). Thus, it appears to be the case that there was never corporate authority for the filing of this Chapter 11 case and that this entire case was a means forum shopping to avoid a disposition by the New York State Supreme Court having the jurisdiction to rule on the issues of equity ownership in this Debtor.

**RELIEF REQUESTED**

**I.    The automatic stay does not apply to non-bankruptcy actions to determine shareholder rights**

14. It is long been held that the automatic stay with respect to a debtor does not apply to prevent or restrain acts or actions among shareholders of the debtor regarding their shareholder interests, particularly where the reorganization will not be affected or impaired, as is the case here where the Movants state to this Court that the Movants have no objection to the Plan proposal for

5

the sale of the real property and the distribution of the proceeds as provided by law. *In Johns Manville Corp.*, 801 F2nd 60 (2nd Cir. 1986); *In re Advances Ribbons and Office Products, Inc.*, 125 B.R. 259 (9th Cir. BAP (Cal). 1991); *Ripley v. Mulroy*, 80 B.R. 17, E.D.N.U. 1987).

15.   Even in cases involving shareholder disputes and the removal of such dispute to the Bankruptcy Court, Courts have determined that such shareholder disputes litigation belong in the State Court and abstain from hearing such litigation, see *In re Brizzolara*, 158 B.R. 761, (Bkrtcy. N.D. Ill. 1993), in *Brizzolara* the Court considered the several series of factors which pay a role in considering whether the Bankruptcy Court should exercise jurisdiction including whether the claims are based on state law, whether there exist an independent basis for federal jurisdiction, whether the case had already been commenced in the State Court and whether the case can be timely adjudicated in State Court, at 771, as well as other factors identified at page 771. Based on all of these considerations, it is clear that the State Court action should proceed to conclusion. It will expedite the decision on the entitlements of the shareholders, and their rights to the distributions. It will enable the State Court, as the Court most familiar with the State Court issues regarding assignments of membership interests, to determine who is entitled to such interests.

16.   This dispute is totally unrelated to the bankruptcy case herein. The Plan itself contemplates that the issue of the disputed shareholder interests must await a judicial determination of the interests. None of the parties are debtors and the dispute will in no way interrupt or derail the reorganization efforts of the Debtor. Moreover, respectfully, it is unlikely under Second Circuit authority that this Court should maintain jurisdiction over such a State Court based and driven litigation.

## II. Movants are entitled to relief from the automatic stay pursuant to § 362(d)(1) "for cause" because the balance of harms weighs in favor of granting relief from the automatic stay

17. Section 362(d)(1) of the Bankruptcy Code provides that the Court "shall grant relief from the [automatic] stay . . . for cause." Once the movant makes an initial showing of "cause," the burden shifts to the debtor "for all issues other than the debtor's equity in property." *In re Baleo Equities Ltd., Inc.*, 312 B.R. 734, 749 (Bankr. S.D.N.Y. 2004). In deciding whether to grant relief from the automatic stay, the Second Circuit looks to the factors set forth in *In re Sonnax Industries, Inc.*, 907 F.2d 1280,1286 (2d Cir. 1990). The most critical factor here is "the impact of the stay on the parties and the balance of harms" since this factor goes directly to whether continuation of the stay is warranted and equitable under the circumstances. Indeed, this factor is often critical in deciding whether to grant relief from the automatic stay. S*ee, e.g., In re Northwest Airlines Corp.*, 2006 WL 382142, *2 (Bankr. S.D.N.Y. 2006) ("The *Sonnax* factors most relevant to this motion [for relief from the automatic stay] are the tenth factor, the interests of judicial economy, and the twelfth factor, the impact of the stay on the parties and the balance of harms.").

18. In weighing the balance of harms, the Court's primary focus should be on the Movants prejudice by being unable to proceed in the State Court forum in which this dispute was brought and should be determined. This is not a case where continuation of the automatic stay will provide the Debtor with a breathing spell from creditors that will enable the Debtor to reorganize. The Debtor is reorganizing and the only question is whether the Movants are entitled to receive the distributions under the Plan. Mr. Moncho did not demonstrate a single reason why he should be entitled to the benefits of the stay where he is not in bankruptcy, and where an expeditious decision in State Court on the entitlement of the shares should not be considered

7

prejudicial particularly where Mr. Moncho's own Plan contemplates such litigation. Under these circumstances, the balance of harms weighs in favor of permitting Movants to proceed in State Court.

19.   Further, in deciding whether to grant relief from the stay, the Court is to consider "the interests of judicial economy and the expeditious and economical resolution of litigation" and "whether the parties are ready for trial in the other proceeding." *In re Sonnax Industries, Inc.*, 907 F.2d at 1286. Here, the State Court is best able to determine the issues in an expeditious manner. Thus, the interests of judicial economy and efficiency weigh heavily in favor of permitting Movants to exercise their rights in the State Court action.

**WHEREFORE**, Movants, respectfully requests entry of an Order granting the relief requested in this Motion, and for such other and further relief as the Court deems just and proper.

Dated: New York, NY
October 28, 2016

/s/ *Leo Fox*
LEO FOX, ESQ.
Attorney for Movants
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595