**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, NY 10017
Jerold C. Feuerstein, Esq.
Jason S. Leibowitz, Esq.
(212) 661-2900
(212) 661-9397 – facsimile
jfeuerstein@kandfllp.com
jleibowitz@kandfllp.com

*Attorneys for SDF85 78th Street 1, LLC*
*& SDF85 78th Street 2, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

In re:

261 East 78 Lofts LLC,

                    Debtor.

_____

Case No. 1:16-11644-shl

Chapter 11

Hon. Sean H. Lane
United States Bankruptcy Judge

**SDF85 78TH STREET 1, LLC AND SDF85 78TH STREET 2, LLC'S RESPONSE
IN FURTHER SUPPORT OF THEIR DECLARATION OF NON-COMPLIANCE**

SDF85 78th Street 1, LLC ("SDF1") and SDF85 78th Street 2, LLC ("SDF2" and together with SDF1, the "Secured Creditors"), secured creditors of 261 East 78 Lofts LLC (the "Debtor") by and through their attorneys, Kriss & Feuerstein LLP, submit this Response (the "Response") to the *Debtor's Objection to Declaration of Non-Compliance* dated February 7, 2017 [ECF No. 59] (the "Objection"), and in further support of the Secured Creditors' *Declaration of Non-Compliance* dated February 6, 2017 [ECF No. 57] (the "Declaration"). In further support of its Declaration, the Secured Creditors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. While the Secured Creditors are less than surprised by the Debtor's desperate attempt to manipulate the facts which led to the Secured Creditors' filing of the Declaration, the Debtor cannot be permitted to place blame on any party other than itself.

2. Simply stated, issue has arisen due to the inactions of the Debtor to follow the express language of the Stipulation, which was heavily negotiated and proffered to this Court in accordance with Bankruptcy Rule 9019 by both the Debtor and the Secured Creditors. For each of the following reasons the Debtor's Objection should be overruled by this Court.

3. First, the Debtor is a sophisticated commercial real estate investor and developer aided by experienced counsel that appears regularly before this Court.

4. Next, counsel to the Debtor and the Secured Creditors dickered over and carefully negotiated the terms and conditions contained in the Stipulation, resulting in numerous iterations which spanned a course of nearly three (3) months to complete, and which was ultimately Ordered by this Court.

5. In addition, the Stipulation is quite clear and unambiguous when it provides that in exchange for the Secured Creditors' negotiated payoff amounts and agreement to forebear from foreclosing on the Property, the Debtor's responsibilities and obligations must be strictly adhered to. In addition, the Stipulation provided as follows:

(i) The Debtor would be required to make timely Interest Payments[1] to the Secured Creditors;

(ii) In the event that the Debtor elected to exercise the Option to extend the Stipulation, that in addition to making timely Interest Payments, a separate Forbearance Extension Fee of $100,000.00 would be due from the Debtor in advance of the January 31, 2017 Deadline, along with timely advanced notice from the Debtor, in writing, confirming the Debtor's intention to

---

1 Capitalized terms used herein but not otherwise defined shall have the same meanings given to them as in the Declaration (as defined herein).

        exercise the Option not less than three (3) business days prior to the Deadline;

(iii)    That the Forbearance Extension Fee would receive different treatment than adequate protection payments because the parties agreed that it would be consideration for the Option and not be credited towards the indebtedness due under the Loan.

6.    Notwithstanding the foregoing, through the Debtor's Objection, the Debtor attempts to blur the express language of the Stipulation and confuse this Court, instead of taking responsibility for its actions, or more appropriately, its failures to act, by suggesting that a "course of dealings", by way of certain oral conversations, allegedly had between the Debtor and the Secured Creditors *after* the Stipulation and Order were entered should somehow be sufficient to override the express terms of the Stipulation and the Order.

7.    In addition, and as set forth more fully herein below, the Debtor has failed entirely to set forth any evidence of an actual course of dealings between the Parties sufficient to override the express terms of the Stipulation, and instead, has introduced the Debtor's unilateral interpretations and opinions about preliminary discussions had between it and the Secured Creditors (and/or their counsel) as evidence that this Court should deviate from the express language of the Stipulation.

8.    Furthermore, the Debtor's frantic, and haphazard scramble to create an alternative fact pattern and storyline by which it could be permitted to re-write the deal made between the Parties cannot be countenanced if this Court's Orders are to relied upon by the parties to this case.

## THE RESPONSE

9.  As set forth in the Declaration, the Stay Relief Order approved the terms and conditions contained in the Stipulation.

10. Pursuant to Section 2 of the Stipulation, captioned *The Automatic Stay*, the Parties agreed, *inter alia*, that although the automatic stay terminated on January 3, 2017, the Secured Creditors would refrain from taking any further efforts to foreclose the Mortgage[2] until

> (i) [T]he earlier of "an uncured event of default hereunder, and (ii) January 31, 2017 (the "Deadline") subject to the Debtor's ability to exercise a one-time option to extend the Deadline pursuant to the terms and conditions discussed more fully below under Section 5.

11. In addition, Section 4 of the Stipulation captioned *Settlement Amount* provides in pertinent part as follows:

> In the event that the Debtor (i) tenders payment to the Secured Creditors sufficient to pay off the Loans in the sum of FIFTEEN MILLION, THREE HUNDRED TWELVE THOUSAND, ONE HUNDRED EIGHTY ONE and 43/100 DOLLARS ($15,312,181.43),[3] **so as to be received by the Secured Creditors by the Deadline (unless extended as set forth in Section 5)**, and (ii) the Debtor is not otherwise in default under the terms of this Stipulation or the Loan Documents, the Secured Creditors will agree to reduce the default rate of interest otherwise accruing under the terms of the Loans from the Default Rate as set forth in the Loan Documents of twenty-four (24%) percent per annum, to eighteen (18%) percent per annum, retroactive to the date of the Defaults, through and including the date of payment (the "Settlement Amount"). In furtherance thereof, the Parties acknowledge that as of the date hereof, the Secured Creditors have provided the Debtor with a detailed statement setting forth the sum necessary to settle the Loans in full by tendering the Settlement Amount by or before the Deadline. (emphasis added).

12. The Stipulation at Section 5, captioned *The Option,* further provided the Debtor with the ability to extend the Deadline, pursuant to the terms and conditions contained therein when it set forth in pertinent part as follows:

---

[2] Capitalized terms used herein but not otherwise defined shall have the sale meanings given to them as in the Stipulation (as defined herein).
[3] This sum represents the amount due under the Loan at a rate of eighteen (18%) per annum from the date of the Defaults through the Deadline.

4

> The Debtor shall have the option of extending the Deadline once, by a period of sixty (60) days (the "Extension Period") from the Deadline (the "Extended Deadline") **by providing the Secured Creditors with (a) not less than three (3) business days' notice in advance of its decision to extend, and (b) a single payment of $100,000.00 (the "Forbearance Extension Fee"),** *so to be received by the Secured Creditors by wire transfer not later than 4:00 p.m. EST, at least one business day in advance of the Deadline*, **TIME BEING OF THE ESSENCE** (the "Option"). The Parties further agree, that in the event that the Debtor properly exercises the Option, interest on the then outstanding balances due and owing under the Loans shall accrue at a rate of twenty (20%) percent per annum of the then outstanding principal sum, per annum, during the Extension Period and that the Debtor shall be required to request a new payoff from the Secured Creditors to determine all amounts due and owing the Secured Creditors (the "Payoff Amount") through and including the Extended Deadline. For the avoidance of doubt, interest to be charged in the event that the Debtor exercises the Option, shall be the Settlement Amount through and including the Deadline, with an additional twenty (20%) percent per annum through and including the Extended Deadline. (emphasis added).

13. In addition, the Stipulation at Section 7, captioned *Events of Default,* further provides in pertinent part as follows:

> Notwithstanding anything to the contrary herein, in the event that the Secured Creditors do not timely receive any (a) Interest Payment within two (2) business days of the schedule set forth in Section 3 above, and after the expiration of a Notice to Cure as set forth in paragraph 12 herein, (b) **full payment of the Settlement Amount by or before the Deadline** … *time being of the essence* as to the Debtor's performance with respect to each of the foregoing requirements set forth herein, **then in any such case, the Settlement Amount or if applicable the Payoff Amount, shall no longer be available to the Debtor, and the Secured Creditors may file an Affirmation of Non-Compliance with this Court, thereby terminating the Secured Creditors' obligation to refrain from enforcing its state law rights in connection with the Loan Documents, including, but not limited to resuming the prosecution of the Foreclosure Action and foreclosing the Mortgage in accordance with the terms and conditions of the JFS**. In the event that the Debtor fails to (x) payoff the Loans by or before the Deadline as may be extended, or, if applicable, (y) payoff the Loans by the Extended Deadline (after tendering the Forbearance Extension Fee and securing the Option, as required herein above), the Debtor understands and acknowledges that the full amounts due and owing under the Loans at the Default Rate as set forth in the Loan Documents and the Claim, plus all applicable interest, fees, costs and other applicable charges,

5

shall again become due and owing by the Debtor, from the date of the Defaults, as if this Stipulation never existed. (emphasis added).

14. Notwithstanding the foregoing, through the Declaration, the Secured Creditors declared that as of February 3, 2017, which was a date that was at least eight (8) days after the Debtor would otherwise have been required to provide the Secured Creditors with notice of its intention to elect to exercise the Option, the Debtor had failed and/or refused to provide the Secured Creditors or their counsel, with any such notice.

15. Furthermore, through the Declaration the Secured Creditors further declared, that as of February 3, 2017, which is a date subsequent to the passing of the Deadline, the Debtor failed and/or refused to provide the Secured Creditors with the Forbearance Extension Fee.

16. Finally, through the Declaration, the Secured Creditors further declared, that as of February 3, 2017, which was a date that was at least (3) days after the Deadline, the Debtor had failed and/or refused to provide the Secured Creditors with the Settlement Amount as it was expressly required to do pursuant to Section 4 of the Stipulation.

17. To the extent that the Debtor alleges that the Secured Creditors were obligated to apply the Interest Payments towards the Forbearance Extension Fee, the Debtor would be materially deviating from the express terms and intention of the Stipulation without any support for such an argument, which expressly and specifically provides that the Interest Payments and the Forbearance Extension Fee are two separate payments to be received from the Debtor by dates certain. See Stipulation at section 3 and 5.

18. In addition, the Debtor provided the Secured Creditors with Interest Payments in advance of the date that this Court entered the Order approving the Stipulation to avoid a situation in which the Secured Creditor would be entitled to seek relief form the automatic stay. The fact that the Secured Creditors waited until after the entry of the Order approving the Stipulation cannot

6

be seen by any stretch of the imagination as the Secured Creditors agreement to accept Interest Payments as the Forbearance Extension Fee.

19. While it is true that Debtor's counsel approached the undersigned at a hearing before this Court, held on November 16, 2016, and asked whether the Secured Creditors would permit the Debtor's Interest Payments to qualify as the Forbearance Extension Fee, the undersigned promptly and unequivocally advised counsel to the Debtor at that same hearing that the undersigned would take the Debtor's proposal back to the Secured Creditors, but was without any authority to agree to same. Needless to say, counsel to the Debtor failed to follow up with the undersigned about such request despite the collective effort to have the Stipulation approved by this Court. In point of fact, none of the issues regarding the Debtor's post-Stipulation request were raised again until the Debtor submitted its Objection.

20. Indeed, while the Debtor attempts to place a series of red herrings before this Court relating to timing of Interest Payments under the Stipulation, the Declaration was filed for the sole reasons that the Debtor failed to exercise the Option and failed to pay off the Loan by the Deadline. Therefore, all other discussion contained in the Objection relating to the Debtor's tendering of Interest Payments is can only be designed to confuse this Court.

21. Similarly, none of the email discussions introduced by the Debtor in connection with the Objection demonstrate anything other than the fact that the Debtor was looking to engage in further settlement discussions with the Secured Creditors. To the extent that the Debtor intended those emails to be evidence of settlement negotiations, the Secured Creditors would request that this Court disregard same pursuant to Federal Rule of Evidence 408.

22. In point of fact, although the Objection suggests that the Secured Creditors were obligated to default the Debtor prior to the Deadline, there is no basis in law or fact for such

statement because the Debtor was not defaulted for any other reasons besides those set forth in the Declaration and hereinabove.

23. As further evidence of the Debtor's dilatory approach to this case, at the hearing held before this Court on January 23, 2017, the Debtor agreed to provide the City of New York ("NYC") with required documentation not later than January 31, 2017, so that NYC could evaluate same and proceed towards a resolution of the adversary.

24. Notwithstanding, however, counsel to NYC advised the undersigned as recently as this week that the Debtor failed to keep its promised to provide such documentation. Instead, upon information and belief, the Debtor first provided such promised documentation to NYC in connection with its Objection on February 7, 2017.

25. No amount of spin from the Debtor can change the fact that, the Debtor was required to take certain actions and make certain payments, which it failed to do.

26. As a result, the Secured Creditors should be entitled to terminate any obligations they may have had under the Stipulation, due to the Debtor's default thereunder, and proceed by way of its State Law rights and remedies in accordance with the relief it bargained for in the Stipulation.

**WHEREFORE**, the Secured Creditor respectfully requests this Court overrule the Debtor's Objection and further relief as this Court deems just and proper.

Dated: February 9, 2017
     New York, New York

                              KRISS & FEUERSTEIN LLP
                              *Attorneys for SDF85 78th Street 1, LLC*
                              *& SDF85 78th Street 2, LLC*

By:   *s/ Jerold C. Feuerstein*
       Jason S. Leibowitz, Esq.
       Jerold C. Feuerstein, Esq.
       360 Lexington Avenue, Suite 1200
       New York, New York 10017
       (212) 661-2900