UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              Chapter 11

261 East 78 Lofts LLC,                              Case No. 16-11644 (SHL)

                        Debtor.
------------------------------------------------------------x

**AMENDED DISCLOSURE STATEMENT PURSUANT TO
SECTION 1125 OF THE BANKRUPTCY CODE**

261 East 78 Lofts, LLC (the "Debtor") hereby submits this Amended Disclosure Statement (the "Disclosure Statement"), pursuant to §1125 of Title 11, United States Code (the "Bankruptcy Code"), in connection with the Debtor's accompanying Amended Chapter 11 Plan of Reorganization of even date (ECF #74) (the "Plan").

## I.    OVERVIEW

**A.    Summary of the Plan.**  This Plan is predicated on a private sale (the "Sale") of the Debtor's six-story medical office building at 261 East 78th Street, New York, NY [designated as Block 1433, Lot 21] (the "Property"), together with the assumption and assignment of all existing commercial leases to a third party known as Perfect JSK Corp. or its nominee (the "Buyer") for the sum of $17.0 million.  The Debtor has recently completed negotiations and executed a contract to sell the Property and assign all leases pursuant to the attached Agreement of Purchase and Sale annexed to the Plan as Exhibit "A" (the "APA").  The Debtor is proceeding with a private sale because of the narrow timeframe in which to conclude the transaction.  Under the APA, the Debtor needs to obtain confirmation of the Plan and close title on or before May 17, 2017.

The Property is encumbered by, *inter alia*, two mortgage liens, in the total sum of $15,312,181.43 as of January 31, 2017, held by SDF85 78th Street 1 LLC and SDF85 78th Street 2 LLC, affiliates of Madison Realty Capital (collectively, the "Madison Capital Lenders").  There is also

a disputed mortgage lien asserted by Joseph Zelik in the principal amount of $1,750,000, and tax liens held by New York City and by Bank of New York Mellon as Collateral Agent and Custodian as assignee of New York City in the total amount of approximately $1,000,000.

Pursuant to a series of stipulations, the automatic stay has been lifted in favor of the Madison Capital Lenders, which have rescheduled a foreclosure sale for May 24, 2017. Notwithstanding the foregoing, the Madison Capital Lenders have agreed to permit the Debtor to continue to pursue a sale at a discounted pay-off of $15 million so long as the transaction closes by May 24, 2017.

The Plan is designed to provide an expedited mechanism for approving the APA and the Sale to the Buyer free and clear of all claims, liens, taxes and encumbrances to the extent provided in the underlying APA relating to the requested assignment of the Madison Capital Lenders mortgage to the Buyer's lender. The net proceeds of the Sale, after payment of the discounted claims of the Madison Capital Lenders ($15.0 million) and undisputed portion of the real estate taxes (approximately $600,000), shall be held in escrow by the Disbursing Agent pending resolution of all claims objections, including objections to disputed real estate taxes in connection with the Debtor's pending adversary proceeding seeking downward tax re-assessments (Adv. Pro. No. 16-01227) (the "505 Action") and the disputed mortgage held by Joseph Zelik.

**B. Approval of this Disclosure Statement.**

Pursuant to 11 U.S.C. §105(d)(2)(B), this Disclosure Statement has been conditionally approved by the Bankruptcy Court as containing adequate information within the meaning of 11 U.S.C. §1125 necessary for creditors to (i) evaluate the Plan; and (ii) determine whether to accept or reject the Plan. Final approval of the Disclosure Statement will be sought by the Debtor in conjunction with confirmation of the Plan. The Court's preliminary approval of the Disclosure

Statement is conditional, and creditors have the right to object to either final approval of the Disclosure Statement, or confirmation of the Plan.

### C. Confirmation of the Plan.

The Bankruptcy Court has scheduled a combined hearing to consider both final approval of this Disclosure Statement and confirmation of the Plan on the same day and time, to wit, May __, 2017 at 10:00 a.m., Eastern Daylight Time. The most critical aspect of the Confirmation Hearing is also approval of the APA and assumption and assignment of the Debtor's commercial leases for pursuant of 11 U.S.C. §§ 363(b) and (f), 365, and 1123(b)(2) and (4). Because of the time exigencies, approval of the Plan also constitutes approval of the entire Sale transaction. Accordingly, any creditor or tenant objecting to the Plan, Sale or proposed assumption and assignment of leases without default should timely file written objections as set forth below.

The combined hearing will be conducted by the Honorable Sean H. Lane in the United States Bankruptcy Court, One Bowling Green, Courtroom 701, New York, NY 10004 on May __, 2017 at ____ __.m. At the combined hearing, the Bankruptcy Court will determine (i) whether or not to approve the Sale; (ii) whether any defaults exist under the Debtor's leases which need to be cured, and if so, in what amounts; and (iii) whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied so the Plan can be approved and the Sale closed on a tax-exempt basis under Section 1146(a). The Debtor believes that the Plan will easily satisfy all applicable requirements of Section 1129(a) of the Bankruptcy Code, since without a sale, the Property will be lost to foreclosure, leaving no funds for any other creditor group.

Any creditors or party in interest may object to final approval of the Disclosure Statement or confirmation of the Plan. The Bankruptcy Court has directed that objections, if any, shall be

3

filed with Bankruptcy Court (with a courtesy copy to the Hon. Sean H. Lane) and served upon counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, Attn: Kevin J. Nash, 1501 Broadway, 22nd Floor, New York, New York 10036, on or before May __, 2017.  The combined hearing may be adjourned from time to time without further notice other than by announcement in open court.

In order for the Plan to be accepted on a consensual basis, each impaired class must accept the Plan.  Acceptance is based upon affirmative votes from each impaired class of voting creditors holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims of those creditors in the particular impaired class who actually vote.

In accordance with section 1126(f) of the Bankruptcy Code, all classes of claims that are impaired may vote to accept or reject the Plan.  A class of claims is impaired if the Plan modifies, alters or changes the Claimant's legal, equitable or contractual rights against the Debtor.  In this case, Class 2 (Secured Claims of the Madison Capital Lenders), Class 3 (Secured Claim of Joseph Zelik), and Class 4 (General Unsecured Claims) are impaired and eligible to vote on the Plan.

Ballots for acceptance or rejection of the Plan will accompany the Plan, and should be completed by all voting classes of creditors.  After carefully considering this Disclosure Statement and the Plan, please indicate your vote on the enclosed ballot and return same before the voting deadline of May __, 2017 to Goldberg Weprin Finkel Goldstein LLP, Attn Kevin J. Nash, 1501 Broadway, 22nd Floor, New York, New York 10036.  Facsimile: (212) 221-6532.  E-mail: KNash@GWFGlaw.com.

In order to be counted, your ballot must be actually received on or before May ___, 2017 at 5:00 p.m. Eastern Daylight Time (the "Voting Deadline").  All forms of personal delivery of

4

ballots including overnight delivery service, courier service, and delivery by hand are acceptable. Facsimile and electronic transmissions are acceptable as well. There is no need to file your Ballot with the Clerk of the Bankruptcy Court. If your ballot is damaged or lost, or if you do not receive a ballot to which you are entitled, you may request in writing a replacement by contacting Goldberg Weprin Finkel Goldstein LLP, Attn Kevin J. Nash, at the stated address.

Only actual votes will be counted. A failure to return a ballot will not be counted either as a vote for or against the Plan.

**D.    Disclaimer.**    The Bankruptcy Court's conditional approval of this Disclosure Statement does not constitute an endorsement of the Plan. No representations other than those explicitly set forth in this Disclosure Statement are authorized concerning the terms of the Plan or the Debtor's development plans, the scope of assets or the extent of the Debtor's liabilities.

This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain documents related to the Plan, certain events in the case and certain financial information. Although the Debtor believes that the Disclosure Statement is accurate, the terms of the Plan govern, and creditors are advised to review the Plan in its entirety.

## II.    EVENTS LEADING UP TO THE BANKRUPTCY FILING

The Property was the subject of an earlier Chapter 11 case before the Hon. Robert E. Gerber (261 East 78 Realty Corporation, Case No. 11-15624) (the "Prior Case"), to address defaults under prior mortgages held by MB Financial Bank NA ("MB"). As part of the confirmed reorganization plan in the Prior Case, MB agreed to a discounted payoff of $10,700,000.

Through an introduction by the Debtor's prior lawyer, Jonathan Pasternak, Lee Moncho negotiated with Sam Sprei ("Sprei") to act as the "take-out lender" and fund the total sum of $14

million needed to confirm the plan in the Prior Case. The $14 million package included a new loan of $10 million from Sprei at a favorable interest rate, plus a contribution of $4 million in fresh capital from Chaim Miller ("Miller"). In return, Miller became eligible to own a shared equity stake with Mr. Moncho in the post-confirmation ownership of the Property.

Following confirmation of the Confirmed Plan, Lee Moncho learned just prior to the scheduled closing, that the actual take-out lender would not be Sprei, but instead, Sprei recruited the Madison Capital Lenders, at "hard-money" rates. He also learned for the first time that Miller did not have all of his required $4 million of new capital.

With no time available to find an alternate source of funding. Mr. Moncho was forced to proceed with the Madison Capital Lenders as a bridge lender to satisfy the MB mortgage debt. Accordingly, the Debtor was formed as the new fee owner of the Property, with Mr. Moncho retaining a 37.5% membership interest, and Chaim Miller, through 261 Lofts Manager LLC becoming the other 62.5% member, based upon his dual promise to deliver the required new capital of $4 million, and pay the interest on the mortgages held by the Madison Capital Lenders. Of course, Miller failed to deliver on his commitments, leaving the Property destined for another bankruptcy.

To make matters worse, it was later discovered that Sprei surreptitiously split off one of the MB mortgages in the sum of $1,750,000 and first assigned it to one of his companies (261 C Note Buyer LLC), and then re-assigned it to one of his business associates, Joseph Zelik, in violation of the Debtor's Operating Agreement and the confirmed plan in the Prior Case.

Miller later improperly transferred a part of his membership interest in 261 Lofts Manager LLC to Chung Peter Dong for the sum of $1 million in violation of the Operating Agreement and without Mr. Moncho's knowledge or consent.

Moncho confronted Miller and Sprei with their wrongdoing, and ultimately Miller executed a written escrow agreement on September 30, 2015, whereby Mr. Moncho received an assignment of Miller's membership interest in 261 Lofts Manager, subject to potential reassignment back to Miller so long as Miller honored his financial commitments to obtain, inter alia, a satisfaction of the disputed Zelik mortgage and a settlement with Dong releasing any claim to a membership interest in 261 Lofts Manager LLC, all before a December 31, 2015 deadline.

Miller failed to comply with these commitments and forfeited any ability to regain his membership interest in 261 Lofts Manager LLC.  However, instead of releasing Miller's membership interests from escrow, Miller's counsel, Jonathan Pasternak, commenced an interpleader suit, contending that there is a purported "dispute" concerning the status of Miller's membership interest in 261 Lofts Managers LLC, when in fact his multiple defaults are clear and unequivocal.

In the meantime, because Miller and Sprei failed to manage the Property properly, the mortgages went into default, and foreclosure actions were commenced by the Madison Capital Lenders and Zelik.  In addition, real estate taxes were unpaid, with New York City ultimately selling certain of its liens to the Bank of New York Mellon as Collateral Agent and Custodian.

With all of the litigation pending, the Debtor filed a Chapter 11 petition on June 3, 2016 to protect the Property while the Debtor seeks a purchaser and addresses the various claims through the bankruptcy claims objection process.

### III.  SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

The Debtor filed the Chapter 11 case with multiple goals in mind. First, the Chapter 11 case was designed to stabilize the Property and eliminate Miller and Sprei from ownership and management. Second, the Chapter 11 provided the Debtor with a ready forum to litigate a number of disputed claims and interests. Third, the Chapter 11 stayed a pending state court foreclosure sale and enabled to Debtor to pursue a going concern buyer.

The Debtor's sales efforts were supported by the Madison Capital Lenders, which entered into a series of stipulations settling the amount of the Madison Capital Lenders' mortgage claim to eliminate certain default interest charges, and to provide a period for the Debtor to sell the Property, which was extended until March 31, 2017.

In the interim, the Debtor fought off a motion by Miller and Sprei to lift the automatic stay. This motion was denied by Order dated November 22, 2016 (ECF #44).

To improve sale prospects, the Debtor also filed the 505 Action seeking a reduction in real estate taxes. The City of New York has opposed the 505 Action and filed a motion for remand and equitable abstention. This motion is still pending, having been adjourned from time to time pending discussions between the parties, and will be heard after the Sale is completed. A large portion of the real estate taxes are undisputed and the sum of at least $600,000 will be paid at closing, with the balance escrowed pending resolution of the 505 Action.

The Debtor's marketing efforts have been extensive, although it was only in the last few days that the Buyer emerged. The Debtor originally retained Eastern Consolidated as broker, pursuant to order dated October 24, 2016 (ECF #30). Eastern Consolidated's agreement expired without a stalking horse contract, and the Debtor was contacted by the Buyer independently. The

8

emergence of the Buyer came "just in the nick of time", so to the speak, since the deadline for the Debtor to find a buyer expired on March 31, 2017, and the Debtor is operating under a final extension which expires on May 24, 2017. This is the date of the scheduled foreclosure sale, and cannot be extended any further, so timing becomes absolutely critical.

To put it simply, the overriding goal of the Plan is first and foremost to get the Property sold before the deadline. Thereafter, the Debtor can and will address claim disputes post-closing, when the universe of available funds and debt can be fully evaluated. Without a completed Sale by May 24, 2017, however, the validity of residual claims becomes academic, since the Property will be lost.

**Sources and Uses of Cash at Closing**

| Payee | Payment | Amount to be Escrowed |
|---|---|---|
| Madison Capital Lenders | $15,000,000 | |
| Real Estate Taxes (Subject to 505 Action) | $600,000 | $500,000 |
| Projected Professional Fees and Expenses of the Debtor's Counsel | $200,000 | |
| U.S. Trustee Quarterly Fees | $20,000 | |
| Disputed Zelik Mortgage | Disputed | }All residual |
| Disputed Unsecured Claims | Disputed | }funds |
| Equity Interests | | |
| Total: | | |

## IV. THE PLAN

A.   UNCLASSIFIED CLAIMS

**General.**  As provided for under Bankruptcy Code Section 1123, Allowed Administrative Claims are not classified under the Plan.

All Administrative Expense Claims (other than Professional Fee Claims) shall be paid in the regular course of business under the terms of applicable contracts and agreements which currently exist between the Debtor and its suppliers and vendors.

The holders of professional fee claims for services rendered on behalf of the bankruptcy estate shall (a) file, on or before the date that is sixty (60) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full by the Debtor, in cash form the Confirmation Fund, in such amounts as are Allowed by the Bankruptcy Court.

B.   CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

1.   **Summary**

The categories listed below classify Claims against the Debtor for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Designation | Impaired |
|---|---|---|
| Class 1 | Real Estate Tax Claims | No |
| Class 2 | Disputed Secured claims of Madison Capital Lenders | Yes |
| Class 3 | Disputed Secured claim of Joseph Zelik | Yes |
| Class 4 | Unsecured Claims of all tenants and vendors. | Yes |
| Class 5 | Equity Interests | Yes |

**2.      Classification, Treatment and Voting**

**Class 1 —Real Estate Tax Claims**

Classification: Class 1 is composed of Allowed Real Estate Tax Claims.

Treatment: The Department of Finance, or such other designated agency of the City of New York, and/or the Bank of New York Mellon as Collateral Agent and Custodian as assignee of the City of New York (the "City"), shall receive a cash distribution on the Closing Date equal to the undisputed portion of all outstanding real estate taxes, claims, and related charges of approximately $600,000. The balance of the real estate taxes are disputed and subject to the 505 Action, which will be resolved post-closing. Accordingly, a separate reserve will be established at Closing to be held in escrow by the Disbursing Agent to cover the amounts in dispute of approximately $500,000 pending a determination of the 505 Action. This reserve will be paid to the prevailing party in the 505 Action or pursuant to the parties' agreement.

Voting: Class 1 is unimpaired. Real Estate Tax Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Class 2 — Secured Claim of the Madison Capital Lenders.**

Classification: Class 2 is composed of the Secured Claims of the Madison Capital Lenders.

Treatment: The Madison Capital Lenders have agreed to accept the total sum of $15 million to be paid on the Closing Date in full satisfaction of all of the Madison Capital Lenders' claims for unpaid principal, accrued interest, fees and other charges so long as the transaction closes on or about May 14, 2017. Upon receipt of timely payment, the Madison Capital Lenders shall cancel the pending foreclosure sale, file a stipulation of discontinuance in the Foreclosure Action, and cancel the pending notice of pendency. Additionally, the Madison Capital Lenders

11

shall assign their mortgages to the Buyer's lender on a non-recourse basis at no additional cost or expense at Closing.

Voting: The Class 2 claims of the Madison Capital Lenders are impaired.

**Class 3 — Disputed Secured Claim of Joseph Zelik.**

Classification: Class 3 is composed of the disputed Secured Claim of Joseph Zelik ("Zelik"), who alleges that he also holds a mortgage against the Property.

Treatment: The Zelik mortgage is highly disputed, having been issued without authorization and in violation of the Debtor's Operating Agreement through the machinations of Sam Sprei and Cham Miller. The Debtor intends to file comprehensive objections to reduce or expunge the Zelik mortgage. Accordingly, Zelik shall not receive any distribution on the Closing Date, and the Debtor shall establish a reserve from the net proceeds of the Sale. This reserve shall be held by the Disbursing Agent in the Confirmation Account pending the final determination of the Debtor's objection to the Zelik mortgage.

Voting: Class 3 is impaired.

**Class 4 —Unsecured General Claims**

Classification: Class 4 is composed of allowed Unsecured General Claims, including debts and obligations owed to vendors, suppliers and tenants.

Treatment: To the extent that the proceeds are sufficient to pay unsecured debt, each holder of an Allowed Unsecured General Claim shall receive a cash dividend equal to the amount of its allowed Unsecured Claim, or a pro rata portion thereof. This distribution shall occur within ten (10) days after the final resolution and entry of an order which become final disposing of both

(i) the City's disputed real estate tax claims in the 505 Action, and (ii) objections relating to the Zelik mortgage.

Voting: Class 4 is impaired.

**Class 5 — Equity Interests**

Classification: Class 5 is composed of the Debtor's Equity Interests.

Treatment: For purposes of the Plan, Lee Moncho is recognized as the sole Equity Interest holder and the only person eligible to receive any potential surplus proceeds and recoveries from Causes of Action, if any, after payment of Administrative Expense Claims, and allowed Class 1, 2, 3 and 4 Claims. To the extent that Chaim Miller, Sam Sprei or Chun Peter Dong assert that they hold an Equity Interest in the Debtor, this will be the subject of litigation. In the event this litigation has not been finally determined on or prior to the Closing Date, the Disbursing Agent shall hold all of the net Sale proceeds that are to be distributed to Class 5 Equity Interests in the Confirmation Fund pending the final resolution of the litigation.

Voting: As an insider, the vote of the Equity Interest Holders is not counted in considering confirmation of the Plan.

### V. IMPLEMENTATION OF THE PLAN

**1. Implementation.** The Plan shall be implemented by the Sale of the Property to the Buyer immediately following confirmation of the Plan. At closing, the Disbursing Agent shall make cash payments pursuant to this Plan on account of undisputed claims, with the balance of the proceeds to be held in escrow.

The Confirmation Order shall constitute an order of the Bankruptcy Court authorizing and approving the Sale and assumption and assignment of leases for conveyance and title purposes.

The Debtor shall request that the Confirmation Order become effective immediately without the fourteen (14) day waiting period otherwise imposed by the Bankruptcy Rules, so the transaction can close immediately after entry of the Confirmation Order.

The Confirmation Order shall authorize the Debtor to:

(a) convey title to the Property and assign the leases pursuant to sections 363(b) and (f), 365, 1123(a)(5)(D) and 1141(a) and (c) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances or interests (other than permitted encumbrances, if any, specified in the APA), to the Buyer pursuant to this Plan and the APA; and

(b) pay all allowed amounts required to creditors and then the balance, if any, to the Equity Interest Holder, in accordance with the terms of this Plan.

**2. Assumption and Assignment of Commercial Leases.** The Sale also includes the assumption and assignment of the commercial leases pursuant to 11 U.S.C. § 365 identified as follows (the "Leases"):

| | |
|---|---|
| ESquared Mgt, Inc. (Lower Level) | Dr. Ketley Michel (1st Floor) |
| Equilibrium Physical Therapy LLC (2nd Floor) | Upper East Summit 7 LLC (Zaniac) 3rd Floor) |
| New York Allergy and Asthma PLLC (4th Floor) | Upper East Smiles P.C. (5th Floor) |
| Mando Group NY, Inc. (6th Floor) | |

The Debtor views the Leases are being in full force and effect, without default. Indeed, only three of the seven tenants, Equilibrium Physical Therapy LLC ($35,000), New York Allergy and Asthma PLLC ($106,561.05) and Upper East Smiles P.C. ($130,000) filed proofs of claim, which the Debtor does not believe are correct. To the extent that any of the commercial tenants disagree, they are required by the Scheduling Order to file a written objection (the "Lease Objection") to the proposed assumption and assignment of the particular lease no later than May __, 2017, listing the nature of the default, the amount of the security deposit, and the amounts

allegedly owed by the Debtor (collectively, the "Cure Amount"). The Debtor reserves the right to object to any Cure Amount asserted by a tenant. Any timely filed Lease Objections which are not resolved between the parties shall be heard at the Confirmation Hearing or such other date as may be scheduled by the Court. For purposes of the APA, however, the Buyer, as assignee of the commercial leases, shall not be liable for any obligations or debts of any tenant at the Property that accrued or arose before the Closing Date of the Sale. The Debtor and the Buyer shall adjust at Closing for any actual security deposits that are timely established by a particular tenant. A tenant's failure to file a Lease Objection asserting a Cure Amount or outstanding security deposit shall be deemed an acknowledgment by that non-objecting tenant that no defaults exist under the parties' particular commercial lease, regardless of whether a proof of claim was timely filed by the tenant. Thus, tenants are urged to take note of the filing deadlines for Lease Objections and Cure Amounts.

    **3.    Post-Closing Date Transactions.** On or after the Closing Date, the Disbursing Agent, on behalf of the Debtor, is hereby authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the transfer of the Property, including the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree.

    **4.    Transfer of Assets.** On the Closing Date, title to the Property shall be transferred to the Buyer pursuant to and in furtherance of this Plan by means of the following:

(a) a Bargain and Sale Deed to the Property in form and substance reasonably acceptable to the Buyer to be recorded in the appropriate register's office (the õDeedö), together with any and all New York City closing documents, including all New York State real property transfer tax returns and any and all affidavits, certificates and other documents which are usual and customary to facilitate a sale of real property in the City of New York;

(b) a Bill of Sale, in form and substance reasonably acceptable to the Buyer, transferring all personal property of the Debtor used in or useful to the operation and maintenance of the Property; and

(c) an Assignment of all commercial leases in form and substance reasonably acceptable to the Buyer reflecting that no defaults exist as of the Closing Date.

**5.     Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, this Plan, including any deeds, bills of sale, assignments, mortgages, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to this Plan or the Sale shall not be subject to any document recording tax, mortgage recording tax, stamp or deed tax or similar government assessment, and the appropriate state or local government official or agent shall forego the collection of any such tax or government assessment and accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment, including without limitation the New York City Real Property Transfer Tax and New York State Documentary Tax.

6. **Preservation of Other Rights and Causes of Action.** All other Causes of Action belonging to the Debtor against third parties shall remain property of the Debtor's estate and shall be vested in the Reorganized Debtor (i.e. Debtor following Confirmation of the Plan) for prosecution as Reorganized Debtor deems necessary and appropriate.

7. **Post-Confirmation Management.** The Reorganized Debtor shall continue to be managed by Lee Moncho.

8. **Rights and Powers of the Debtor.** The Debtor shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) direct that all distributions contemplated hereby be made, (iii) prosecute, settle and enforce all causes of action and claims on behalf of the estate, and (iv) exercise such other powers as may be deemed by the Debtor to be necessary and proper to implement the provisions hereof.

9. **Conditions Precedent to the Effective Date.** The following are conditions precedent to the Effective Date that must be satisfied:

    (a)    The Sale Order shall have been entered by the Bankruptcy Court approving the APA in all material respects;

    (b)    Confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court;

    (c)    The Confirmation Order shall have become a Final Order, unless the Bankruptcy Court waives the period set forth in Bankruptcy Rule 6004(h);

(d) The Closing Date shall have occurred, the purchase price received by the Debtor, and title to the Property shall have been conveyed to the Buyer in accordance with this Plan and the Confirmation Order;

(e) There shall not be in effect on the Effective Date any Order entered by a court of competent jurisdiction staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan; and

(f) All other actions and documents necessary to implement the Plan shall have been effected or executed in form and substance satisfactory to the Debtor.

**10.    Retention Of Jurisdiction.** Notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction until the case is closed to perform the following: (a) Ensure that the Plan is fully consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code; (b) Resolve all matters arising under or relating to the Plan, including, without limitation, the enforcement, interpretation and any issues or dispute relating to the post-confirmation closing on the Sale of the Property; (c) Allow, disallow, determine, liquidate or classify, any secured or unsecured Claims, including, without limitation, the resolution of any request for payment of any Administrative Expenses, the resolution of any and all objections to the allowance any Claims, and the resolution of any adversary proceeding; (d) Grant or deny any and all applications for allowance of compensation and reimbursement of expenses by the professionals retained during the bankruptcy case; (e) Resolve any motions or applications pending on the Effective Date; (f) Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the Plan; (g) Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, deeds, instruments and other agreements or documents created in connection with the Plan or to


enforce all orders, judgments, injunctions, and rulings entered in connection with the bankruptcy case; (h) Issue any orders or take such other actions as may be necessary or appropriate to restrain interference by any person or entity with consummation or enforcement of the Plan; and (i) Enter a Final Decree concluding the bankruptcy case.

## VI.    BASIC REQUIREMENTS FOR CONFIRMATION OF THE PLAN

Section 1129(a) of the Bankruptcy Code lists a number of findings that need to be made prior to Confirmation.  In this case, the Debtor is selling the Property and distributing all of the net proceeds to the holders of allowed claims in accordance with the priority scheme established under the Bankruptcy Code.  In the end, the Debtor anticipates that all creditors will support the Plan as the best way to maximize the value of the Property, even if various claims come under objection.  Accordingly, the Debtor is confident that creditors will support the Plan.

In addition to acceptance of the Plan by creditors, there are two additional requirements that are worth highlighting for purposes of the Disclosure Statement:

**Feasibility of the Plan.**  As a prerequisite to confirmation, Bankruptcy Code § 1129(a)(11) requires that the Debtor demonstrate the ability of the Buyer to close on the sale, fund the Plan, and establish that confirmation is not likely to be followed by the need for further financial reorganization or restructuring.  The Buyer has tendered a deposit of $1 million, which will be forfeited if the Buyer fails to Close, a strong indicator that the Buyer is serious about consummating the Sale.  At the Confirmation Hearing, the Buyer will provide proof of its ability to pay the balance of the purchase price at Closing, which will establish feasibility.

**Best Interests Of Creditors Test.**  The Plan must also be in the õbest interests of creditorsö.  This is a legal term of art which requires that the Plan provides a dividend to the class

of creditors that vote against the Plan, which is equal to or greater than the distribution those creditors would realistically receive if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code. Given the looming foreclosure sale, there is little doubt that creditors would receive nothing in a Chapter 7 liquidation.

## VII. CONCLUSION

The Debtor believes the Plan should be confirmed, and urges creditors to vote in favor of the Plan.

Dated: New York, New York
April 27, 2017

| 261 EAST 78 LOFTS, LLC | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP |
| --- | --- |
| | Attorneys for the Debtor |
| | 1501 Broadway, 21st Floor |
| | New York, NY 10036 |
| By: /s/ Lee Moncho | By: /s/ Kevin J. Nash, Esq. |
| Name: Lee Moncho | Kevin J. Nash, Esq. |
| Title: Manager | |

X:\GWFG\New Data\Yen\Word\Moncho, Lee - 261 East 78 Lofts LLC\Disclosure Statement (Amended) 04-27-17 v1.Doc